**Earl A. JOHNSON et al., Plaintiffs and Respondents,**

v.

**NATIONAL PUBLIC SERVICE INSURANCE COMPANY et al., Defendants,**

**Ann F. Olsen, successor in interest to Rocking O Horse Trailers, Incorporated, et al., Appellants.**

**No. 13508.**

Supreme Court of Utah.

May 30, 1975.

Milton T. Harmon, Nephi, for appellants.

Boyd M. Fullmer, of Fullmer & Harding, Salt Lake City, for plaintiffs and respondents.

HENRIOD, Justice:

Appeal from a quiet title judgment favoring plaintiffs. Affirmed with costs to Johnsons.

The facts here are somewhat ambulatory, and somewhat as dissonant as a noisy carousel. Fairly, however, they may be abstracted thus:

In August, 1963, one Clark and his wife, under a uniform real estate contract, sold their property to Ron and Ann Olsen, who owned Rocking O Horse Trailers, Inc.,— which name added nothing to clarify ensuing events. The contract, which was recorded, provided on payment for a warranty deed, title insurance or abstract of title at the election of the sellers, and for costs and attorney's fees if suit were filed to enforce it.

Hard times plagued the Olsens, resulting in termination of the contract and replacement with a like one, with a lesser purchase price. The Rocking Horse corporation, wholly owned by the Olsens, became the buyer on November 10, 1966, and a bankrupt by petition on January 30, 1967, less than three months thereafter. This also was after federal revenuers had seized the property for taxes.

On March 3, 1967, a Trustee was appointed, and on May 17, 1967, was authorized to sell the property, and during such entrustment, the Rocking Horse corporate charter was revoked by the State. After a year without success, the Trustee turned the property over to the Internal Revenue Service and on June 3, 1968, pursuant to petition granted by the Referee, and that agency, on a forced sale, sold the property to the Johnsons on November 12, 1968. The last payment on the 1966 contract had been made in September, 1968. After the forced sale, Johnsons took possession of the property and have continued such possession, paid all taxes to date, and have placed improvements thereon in the amount of $12,000.

Sometime after the sale the federals apparently got religion and plagued this case by cancelling the sale and returning the purchase price, "due to legal problems involving title to the seized property," [1] and the Johnsons promptly bought Clarks' interest in the fee by quitclaim from them. Also, as a collateral thereto they received an assignment of Clarks' rights under the 1966 contract. Almost a year after cancelling the sale and refunding the purchase price, and on October 28, 1969, the I. R. S. released the property from the "levy upon execution." On December 17, 1969, about a year and a half after the Rocking Horse lost its charter, it purported to transfer its claimed rights in the 1966 contract, by an instrument called "Agreement of Conveyance" signed by Ron Olsen, as president, to his wife, Ann F. Olsen. This document

---

1. This bit of unorthodoxy neither is explained nor was it made an issue here, but appears in the eyes of the beholder to be an out of character rip-off by the tax people without much charity to anyone.

was not recorded and long since predated the lis pendens filed in this suit.[2]

No payment ever was made or tendered by Rocking Horse or Ann to Clarks, the Trustee or the Johnsons after September, 1968, until after this suit was filed some five years after September, 1968, the last time a payment had been made or even tendered, during Johnsons' possession of the property.

One day after execution of the so-called "Agreement of Conveyance," a letter from the I. R. S. addressed to Mr. Olsen, dated December 18, 1969, reminded him of his December 15, 1969, written agreement personally to remit Rocking Horse's continuing default in payment of the delinquent taxes.

As to the ostensible "tender" mentioned above, counsel conceded in his brief that it was made by Mrs. Olsen's personal check, (at a time she had no funds in the bank) for an amount she had calculated to be due, all on condition that it be presented for payment to the bank, together with a warranty deed and title insurance, including a sort of guaranty statement to the effect that in such case the bank would honor the check.[3]

There was only one point urged on appeal: That it was error to grant a summary judgment on the ground that the "Agreement of Conveyance" to Ann Olsen, executed by Rocking Horse, was of no effect since the equitable title to the property was vested in the Trustee.

The point urged on appeal is somewhat disarming in the light of the uncontroverted facts condensed above, which largely were recounted in the court's findings. It is highly significant, uncontradicted, and must be remembered that at the time of the purported conveyance in the "Agreement of Conveyance," the Rocking Horse not only did not have anything to sell but

it could not have sold an interest in the property, since it had lost its charter and was defunct.

The conclusions of law said that 1) The tender was insufficient; 2) That at the time of the "Agreement of Acceptance," the corporation's interest became vested in the Trustee, and the corporation had nothing to assign.

■ The record clearly reflects that the bankruptcy court turned the property over to the Trustee for the purpose of selling the property; that on a petition seeking relief from such duty only to sell the property, (not a "Petition for Abandonment" claimed by counsel for Mrs. Olsen) the referee in bankruptcy who had sent the property to the Trustee for sale, granted the Trustee's request for relief from such further responsibility, ordered that the property "be returned *to the United States of America and the Internal Revenue Service,*" and instructed the Trustee to execute necessary documents for accomplishment. It would appear that the authorities cited by defendant Olsen anent revesting of title to the bankrupt on abandonment of the Trustee, are not dispositive here, since there was no such an abandonment, but simply a request to be relieved of an order to try and sell the property, as stated above.

■ The Johnsons in every way acted equitably and legally, and the Olsens made no effective effort to claim an interest in the property taken in the bankruptcy they initiated themselves, even though they knew of Johnsons' open occupation and claim, by their open and notorious occupation for many years. The Olsens came around after Johnsons filed a quiet title suit after being required to publish summons to alert the Olsens whose whereabouts were unknown to the plaintiffs.

---

2. Filed January 22, 1973.

3. There is nothing in the record that the bank in any manner would have honored the check where no funds were available presently to cover it; or that there was any letter of credit or anything else to indicate it would lend credit or accommodate the maker in any manner whatsoever.

It would appear that if the equity concept has substance in our judicial process, this would appear to be a case eminently suited for the application of equitable principles, and of consequence we affirm the trial court.

CALLISTER, C. J., and TUCKETT, J., concur.

ELLETT, J., dissents.

CROCKETT, Justice (concurring in result):

In the counterclaim of Mrs. Ann Olsen, she seeks to assert an equitable claim to the subject property deriving through the purchase contract as explained in the main opinion.[1] It is elemental that one who invokes considerations of equity and good conscience must have so conducted herself as to justifiably demand them. If the evidence and the reasonable inferences to be drawn therefrom are looked at in the light most favorable to the findings and judgment of the trial court as they should be, I do not see the defendant's conduct as justifying a ruling in her favor.

Whatever interest the Rocking O Horse Trailers, Inc. had in the property was divested by the transfer to the trustee in bankruptcy. The dealings of the Internal Revenue Service therewith, including the sale and the later cancellation thereof, did nothing more than to cause that interest to revert to the trustee. I do not see that there was any revesting in Rocking O Horse. Therefore the purported transfer of the interest of that defunct family corporation to Mrs. Olsen accomplished nothing. (Parenthetically, I do not dispute defendant's contention that the officers of a defunct corporation can "wind up its affairs" including necessary transfers of legitimately held corporate property.) [2]

These facts are salient: the Olsens had failed over a period of five years to make payments on the contract; had even failed to pay the taxes on the property; and they did not come forward and attempt to assert rights therein until after the Johnsons had acquired it, made substantial improvements thereon, and brought this action to quiet title. Under such circumstances, I think the fair and reasonable conclusion is that they should be deemed to have abandoned the contract; and further agree that they have not so conducted themselves as to justify the invocation of the considerations of equity and good conscience mentioned above in their behalf.

There is another important proposition, which correlates with and falls in the same character as what has been said above, and which effectively supports the judgment of the trial court: the finding expressly made that the Olsens did not make and have not made, a proper and bona fide tender upon which preservation or reinstatement of their rights under the contract could be predicated.

---

1. That under our law there is but one form of civil action, and that rules of law and equity may both be administered therein see Article VIII, Sec. 19, Utah Constitution, and also Wasatch Oil Refining Co. v. Wade, 92 Utah 50, 63 P.2d 1070.

2. See Sec. 16-10-101, U.C.A.1953; 97 A.L.R. 477.